UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SHANE S. GANDY,

            Plaintiff,

      v.

PEPSI-COLA & NATIONAL BRAND
BEVERAGES, LTD., AND JOHN DOES
1-10,

            Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 10-1932
          (JEI/AMD)

**OPINION**


**APPEARANCES:**

ROGER PAUL FRYE
By: Roger Paul Frye, Esq.
109 E. Atlantic Avenue
Audubon, New Jersey 08106
      Counsel for Plaintiff

BLANK ROME LLP
By: Jennifer Hale Eagland, Esq.
301 Carnegie Center
Princeton, New Jersey 08540
      Counsel for Defendant Pepsi-Cola & National Brand Beverages,
      Ltd.


**IRENAS**, Senior District Judge:

      This employment discrimination suit comes before the Court on

Plaintiff's Motion to Reopen the Case and Amend his Original

Complaint.  Defendant opposes the motion.  For the reasons stated

herein, the Motion to Reopen will be granted and the Motion to

Amend will be granted in part and denied in part.

**I.**

Defendant Pepsi-Cola & National Brand Beverages, Ltd. ("Pepsi") hired Plaintiff Gandy for a "merchandiser" position on April 10, 1995.  (Compl. ¶ 1; Proposed Amend. Compl. ¶ 8)  A few months later, in June, 1995, Gandy was involved in an automobile accident in which he sustained a "Traumatic Brain Injury" ("TBI"). (Compl. ¶ 2; Proposed Amend. Compl. ¶ 9)  After recuperating from his injury for approximately one year, Gandy returned to his position on June 6, 1996.  (Compl. ¶ 3[1]; Proposed Amend. Compl. ¶ 10)

"On September 1, 2000, [Gandy] was terminated from his merchandiser job based on performance issues."  (Compl. ¶ 3; Proposed Amend. Compl. ¶ 10)  After pursuing union grievance procedures and participating in arbitration, Gandy was reinstated on July 2, 2001.  (Compl. ¶ 4; Proposed Amend. Compl. ¶ 11)

After his reinstatement-- approximately five and a half years after his accident-- Gandy asserts that he "consistently requested" that Pepsi provide him a "'cooling off room'" where he could "'chill out' in the event of the ever-present taunting by fellow employees."  (Proposed Amend. Compl. ¶ 12)[2]  Pepsi allegedly

---

[1]  The original Complaint alleges, "[a]fter nearly one year, plaintiff returned to his merchandiser position on June 6, <u>2000</u>." (Compl. ¶ 3).  The date appears to be an error which is corrected in the proposed Amended Complaint.

[2]  Nothing in the Complaint or Proposed Amended Complaint indicates the motivation for the alleged taunting.  Plaintiff's brief in support of his Motion suggests that Gandy's brain injury

"ignored" or denied the requests.   (Proposed Amend. Compl. ¶ 12)

On May 16, 2008, Gandy was "attacked by a co-worker" resulting in "injuries to his knee and back."   (Compl. ¶ 6; Proposed Amend. Compl. ¶ 13)   Pepsi terminated Gandy that same day.   (Compl. ¶ 6; Proposed Amend. Compl. ¶ 13)

On October 30, 2008, Gandy filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") alleging that Pepsi unlawfully discriminated against him on the basis of his disability in violation of Title VII of the Civil Rights Act ("Title VII"), the Americans With Disabilities Act ("ADA"), and the New Jersey Law Against Discrimination ("NJLAD"). (Proposed Amend Compl. § 1)   The EEOC referred the claims to the New Jersey Division of Civil Rights ("DCR") for an initial review. (*Id.*)   On October 15, 2009, the DCR issued a finding of "no probable cause." (Proposed Amend Compl. § 2)

On January 11, 2010, the EEOC notified Gandy that it had adopted the DCR's findings and that Gandy had 90 days to file suit. (Compl. ¶ 10, Ex. A.)

On April 15, 2010, Gandy filed his initial Complaint against Pepsi in this Court.   The Complaint asserted claims of unlawful termination and failure to accommodate in violation of NJLAD.[3]   On

_____

caused him to suffer anger incidents, which fellow employees allegedly "delighted in" evoking. (Pl's Br. p. 6)

[3]   While the second count of the Complaint vaguely asserts that Pepsi violated "State of New Jersey and Federal laws regarding discrimination against persons with disabilities," the

September 29, 2010, this Court dismissed Plaintiff's Complaint
without prejudice for failure to prosecute.  *See* Fed. R. Civ. P.
4(m).

Plaintiff's original counsel in this case was disbarred in
June, 2011. (Certification of Roger Paul Frye, Esq. ¶ 1)[4]  Gandy
retained his current counsel in December, 2011 (Id.), and filed the
instant Motion to Reopen the Case and Amend the Complaint in March,
2012.

While the Proposed Amended Complaint is not a model of
clarity, it appears to assert claims for wrongful termination and
failure to accommodate in violation of both the NJLAD and the ADA.[5]

## II.

### A.  Motion to Reopen the Case

Fed. R. Civ. P. 60(b) provides, "[o]n motion and just

---

only statute specifically identified in the Complaint is NJLAD.

[4]  The New Jersey Courts Office of Attorney Ethics Quarterly
Discipline Report for the period April 1, 2011 through June 30,
2011, publicly available at http://www.judiciary.state.nj.us/oae/
discipline.htm, confirms that Stephen M. Hiltebrand was
"disbarred by consent" on June 17, 2011.

[5] It is unclear whether Plaintiff's proposed Amended
Complaint also asserts a claim under Title VII.  Any such claim
would fail as a matter of law because Plaintiff is not a member
of a Title VII protected class.  *See Sarullo v. U.S. Postal
Serv.*, 352 F.3d 789, 797 (3d Cir. 1991) ("every Title VII
plaintiff must demonstrate ... that she suffered discrimination
based upon her membership in a class protected under Title VII");
*Patterson v. AFSCME #2456*, 320 F. App'x 143, 147 (3d Cir. 2009)
(holding that an employee's disability did not qualify her as a
protected class member for a Title VII claim).

terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . ; or (6) any other reason that justifies relief."

"In simple English, the language of the 'other reason' clause [of Rule 60(b)(6)] . . . enable[s] [courts] to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. U.S.*, 335 U.S. 601, 615 (1949).  "A motion brought pursuant to Rule 60[(b)(6)] is addressed to the sound discretion of the [district court]." *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 978 (3d Cir. 1978).

### B.  Motion to Amend the Complaint

Federal Rule of Civil Procedure 15(a)(2) states that a party may amend its pleading with the opposing party's consent or the court's leave.  "[L]eave to amend shall be freely given when justice so requires."  *Forman v. Davis*, 371 U.S. 178, 182 (1962)(citing Fed. R. Civ. P. 15(a)(2)).  However, the grant or denial of leave is within the discretion of the District Court, and a court may deny leave to amend in the presence of "undue delay, bad faith, dilatory motive, prejudice, [or] futility."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)(internal citations omitted).

The standard for denying leave based on futility is whether the complaint as amended would survive a motion to dismiss.  *See*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434.  As a result, when assessing the futility of a proposed amendment, courts apply the same standard used to decide whether to grant a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Id.*

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).

While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible.  *Phillips*, 515 F.3d at 234.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

6

### III.

The Court first addresses the Motion to Reopen before turning to the Motion to Amend.

### A.

Gandy moves to reopen the case, seeking relief from this Court's Order of September 29, 2010, which dismissed the case without prejudice for failure to timely serve the Complaint.  Gandy asserts that his counsel at the time of the dismissal, Mr. Hiltebrand, had completely stopped communicating with Gandy.  Gandy explains that the neglect which resulted in the dismissal of his case-- namely, failing to serve the Complaint--  was solely Mr. Hiltebrand's neglect, of which Gandy himself was not aware.

Unfortunately, Rule 60(b)(1)'s "excusable neglect" ground for reopening the case is not available to Gandy because more than one year has elapsed between the Order of September 29, 2010 and the filing of the instant Motion on March 12, 2012.  *See* Fed. R. Civ. P. 60(c)(1) (a motion under Rule 60(b)(1) must be made "no more than a year" after the entry of the order).  Thus, Gandy must resort to Rule 60(b)'s catch-all reason, "(6) any other reason that justifies relief."

An analogous case came before the Third Circuit in *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 978 (3d Cir. 1978). In that case, the district court denied the plaintiffs' motions to vacate the orders entered on the defendant's unopposed summary

judgment motions.  *Id.* at 977.  The Court of Appeals agreed with the district court that the record did not support a finding of mistake or excusable neglect by plaintiffs' original attorney in failing to oppose the motions, but nevertheless reversed the district court, holding that "the motion to vacate should have been granted under Rule 60(b)(6)." *Id.* at 978.  The Court explained that: (1) plaintiffs' attorney's "egregious" and "gross" "neglect" "amounted to nothing short of leaving his clients unrepresented," *id.* at 977-78; (2) that the record disclosed no "neglect by the parties," *id.* at 979; and (3) absent relief from the summary judgment orders, plaintiffs would suffer "extreme and unexpected hardship" because they would be denied an adjudication of their claims on the merits. *Id.* at 979.  Therefore, the Court concluded that justice required vacating the summary judgment order pursuant to Rule 60(b)(6).  *Id.* at 979.

    For the reasons discussed more fully in Section B.,2. of this Opinion (addressing equitable tolling), the Court concludes that: (1) Mr. Hiltebrand's conduct constitutes gross attorney negligence; (2) Gandy was not neglectful of his case; and (3) just as in *Boughner*, absent relief from the dismissal order, Gandy will suffer extreme and unexpected hardship because he will be denied an adjudication of his claims in the merits.  Therefore the Court

holds that relief under Rule 60(b)(6) is justified.[6]   The Motion to Reopen will be granted.

**B.**

**1.**

As to Gandy's NJLAD claims, amendment would be futile because the claims are barred by NJLAD's election of remedies provision.

The Law Against Discrimination provides alternative avenues for redress for unlawful discrimination.  An aggrieved party may file suit in a court of law or seek relief from the DCR.  N.J.S.A. 10:5-13; *see generally Hernandez v. Region Nine Hous. Corp.*, 146 N.J. 645, 656 (1996) ("the LAD requires a complainant to make an election of remedies between either the DCR or the Superior Court.").  When a plaintiff elects the administrative remedy, NJLAD provides that such proceedings "shall, while pending, be exclusive; and the final determination therein shall exclude any other action,

---

[6] Other circuits have similarly held that gross attorney neglect qualifies as an extraordinary circumstance allowing a litigant to use Rule 60(b)(6) to circumvent Rule 60(b)(1)'s one-year limitations period to obtain relief.  *See Lal v. Cal.*, 610 F.3d 518, 524 (9th Cir. 2010)(granting relief from dismissal with prejudice where attorney mislead the client to believe he was actively litigating the case despite his failure to do so); *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1172 (9th Cir. 2002)(same); *Fuller v. Quire*, 916 F.2d 358, 359-61 (6th Cir. 1990)(affirming grant of relief from a dismissal for lack of prosecution where the attorney mislead the client and ceased all contact); *L.P. Steuart, Inc. v. Matthews*, 329 F.2d 234, 235-36 (D.C. Cir. 1964)(affirming grant of relief from dismissal for an attorney's failure to prosecute due to family problems).

civil or criminal, based on the same grievance of the individual

concerned."  N.J.S.A. 10:5-27.  "N.J.S.A. 10:5-27 basically seeks

to prevent parties from having 'a second bite at the apple' by

pursuing the alternative route to relief.  It seeks to prevent

duplication of efforts and forum shopping."  *Wilson v. Wal-Mart*

*Stores*, 158 N.J. 263, 271 (1999).

Gandy all but concedes that the DCR's final determination on

the merits of his NJLAD discrimination claims (Compl. ¶¶ 10-11 and

Ex. A; Proposed Amend. Compl. ¶ 1-2; Eagland Decl. Ex. B) bars his

NJLAD claims here.  He explains in his brief,

> [t]he filing of Plaintiff's initial claims based
> solely on the LAD with both the EEOC and the DCR was
> a tactical mistake, which the First Amended Complaint
> is intended to correct by emphasizing Plaintiff's
> claims under the ADA.  Contrary to Defendant's
> assertions the First Amended Complaint is not a
> 'second bite of the apple' but rather a new complaint
> properly raising and emphasizing the ADA claims.

(Pl's reply br. p. 13)

Gandy's characterization of his Proposed Amended Complaint

notwithstanding, the Proposed Amended Complaint does plainly assert

the same discrimination claims pursuant to NJLAD that were the

subject of the DCR investigation and final determination.  Those

claims are barred by the election of remedies provision.  As to the

NJLAD claims, the Motion to Amend will be denied as futile.

### 2.

As to the ADA claims, Pepsi asserts that amendment would be

futile because the claims are untimely.  Pepsi admits that the original complaint was filed on the 90ᵗʰ day of the 90 day period to file suit after Gandy received the EEOC's right-to-sue letter.  *See* 42 U.S.C. § 2000e-5(f).  However, Pepsi argues that because the original complaint was subsequently dismissed without prejudice, it cannot operate to toll the 90-day period, and thus Gandy's claim is untimely.

Pepsi is correct that a complaint that is later dismissed without prejudice, and with no conditions for reinstatement, cannot toll the statute of limitations.  *See Brennan v. Kulick*, 407 F.3d 603, 606 (3d Cir. 1999) ("A 'statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice,' as 'the original complaint is treated as if it never existed.'")(quoting *Cardio-Medical Assocs. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 77 (3d Cir. 1983)).  However, Gandy argues that grounds for equitable tolling exist, and the Court agrees.

"Under equitable tolling, plaintiffs may sue after the statutory time period for filing a complaint[7] has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances."  *Seitzinger v. The Reading Hospital and Medical Center*, 165 F.3d 236, 240 (3d Cir. 1999).  In

---

[7]  The parties do not dispute that the ninety-day time limit in which to file suit is "akin to a statute of limitations rather than a jurisdictional bar."  *Seitzinger v. The Reading Hospital and Medical Center*, 165 F.3d 236, 240 (3d Cir. 1999).

particular, the Third Circuit has "expressed a willingness to invoke equitable tolling . . . when the plaintiff in some extraordinary way was prevented from asserting [his] rights."  *Id.* (internal citations and quotation omitted).  "Gross attorney error"-- as opposed to "a garden variety claim of excusable neglect by an attorney," *id.* at 240-41 (internal citation and quotation omitted)-- can bring a plaintiff's case within the "narrow circumstances in which the misbehavior of an attorney may merit such equitable relief."  *Id.* at 239.

   *Seitzinger* specifically addresses the issue of "when the circumstances surrounding an attorney's misconduct are sufficient to merit equitable tolling of the statute of limitations."  165 F.3d at 238.  In a thorough and instructive discussion, Chief Judge Becker distinguished between misbehavior constituting mere attorney neglect, and the extraordinary misconduct that rises to the level of gross attorney error.  *See Seitzinger*, 165 F.3d at 240-42.  While an attorney's mere "absence from the office" or simply "fail[ing] to file the complaint in a timely manner probably constitutes garden variety neglect," *Seitzinger* holds that "affirmative misrepresentations to [a] client" that a complaint was timely filed rise to the level of gross error.  *Id.* at 241.

   Chief Judge Becker also cited with approval cases equitably tolling the statute of limitations when an attorney "abandoned" the client "due to the attorney's mental illness," and when an "attorney irresponsibly abandoned his client and left town."  *Id.*

at 240 (internal citations and quotations omitted).

    The actions of Gandy's former attorney, Mr. Hiltebrand, were

not garden variety neglect.  Mr. Hiltebrand did more than just fail

to serve the Complaint.  He stopped communicating altogether with

Gandy, and then later, failed to inform him that he had been

disbarred and therefore could not possibly continue to represent

Gandy.[8]  Moreover, even after Gandy retained his current counsel,

Mr. Hiltebrand failed to turn over Gandy's file to the new

attorney.  (Frye Cert. ¶ 2)  Thus, Mr. Hiltebrand, in effect,

abandoned Gandy and his case.  The Court concludes that this

misconduct amounts to gross attorney error.

    The conclusion that gross attorney error occurred in this case

does not end the equitable tolling analysis, however.  The Court

must also examine whether Gandy was reasonably diligent in pursuing

his case, and whether Pepsi will be unfairly prejudiced if the time

for filing is tolled.  *See Seitzinger,* 165 F.3d at 241.

    Pepsi argues that Gandy was not reasonably diligent because he

waited "fourteen months after the dismissal of his case to retain

another lawyer, who then waited an additional three months

thereafter to file this motion."  (Def's Br. p. 10)  The flaw in

Pepsi's argument is that Gandy did not know that his case had been

dismissed at the time is was dismissed; he believed Mr. Hiltebrand

---

    [8]  Indeed, Mr. Hiltebrand has never notified the Court that
he no longer represents Gandy.  To date, the docket indicates
that Mr. Hiltebrand is an active "attorney to be notified" in
this case.

was still handling the case at that time.  (Frye Cert. ¶ 4)

Moreover, Gandy's new counsel has explained that the three-month

delay in filing the instant motion after he was retained was due to

Mr. Hiltebrand's failure to transfer the file.[9]  Thus it appears

that the delay in moving to reopen this case and file the proposed

amended complaint was principally caused by Mr. Hiltebrand's

actions (or inactions) and not Gandy's lack of diligence.

Lastly, Pepsi will not be prejudiced by tolling the filing

time and allowing Gandy's ADA claims to go forward.  The claims are

based on the same facts that were the subject of the DCR

proceeding, in which Pepsi participated.  Thus, Pepsi had notice of

the factual basis for Gandy's ADA claims even before the original

complaint was filed and should not be caught by surprise.

The Motion to Amend will be granted as to the ADA claims.


**IV**.

For the reasons stated herein, the Motion to Reopen will be

granted.  The Motion to Amend will be granted as to the ADA claims

and denied in all other respects.  An appropriate Order accompanies

this Opinion.


Date: September 4, 2012            s/ Joseph E. Irenas
                                  Joseph E. Irenas, S.U.S.D.J.

---

[9]  Indeed, Gandy's current counsel states he has yet to
receive the entire file from Mr. Hiltebrand.  (Frye Cert. ¶ 2)