```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| SHANE S. GANDY,<br><br>    Plaintiff,<br><br>    v.<br><br>PEPSI-COLA & NATIONAL BRAND BEVERAGES, LTD.,<br><br>    Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 10-1932<br>      (JEI/AMD)<br><br>**OPINION** |

**APPEARANCES**:

SHANE S. GANDY, *pro se*
7929 Stow Road
Pennsauken, New Jersey 08110

ROGER PAUL FRYE
By: Roger Paul Frye, Esq.
109 E. Atlantic Avenue
Audubon, New Jersey 08106
    Former Counsel for Plaintiff[1]

BLANK ROME LLP
By: Stephen M. Orlofsky, Esq.
    Anthony B. Haller, Esq.
    Brooke T. Iley, Esq.
301 Carnegie Center
Princeton, New Jersey 08540
    Counsel for Defendant Pepsi-Cola & National Brand Beverages, Ltd.

---

[1] After the instant Motion was fully briefed, Attorney Frye advised this Court of his disbarment and withdrew from the case. No other attorney has entered an appearance on behalf of Plaintiff.

**IRENAS**, Senior United States District Judge:

This is a disability discrimination suit pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.[2] Plaintiff Shane Gandy asserts that his former employer, Defendant Pepsi-Cola & National Brand Beverages, Ltd. ("Pepsi"), discriminated against him on the basis of his disability when Pepsi fired him and failed to provide him with reasonable accommodations.

Pepsi moves for summary judgment. Because the record evidence cannot support an inference that the relevant decision makers knew of Gandy's disability, or had reason to know that his anger outbursts were a symptom of his disability, the motion will be granted.

I.

Gandy, who worked in Pepsi's warehouse, admittedly suffers from anger and frustration issues. The record discloses three separate occasions in the year prior to Gandy's termination where Gandy "lost his temper" with various co-workers, leading to "verbal altercations" and in one instance, a physical fight. (Plaintiff's Ex. 3) Gandy asserts that the confrontations were

---

[2] The Court exercises federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

started by his co-workers, who liked to harass him; however, he does not dispute that the confrontations occurred.

After the second incident, Pepsi required Gandy to attend an anger management counseling program, which Gandy successfully completed. (Plaintiff's Exs. 3, 12)

After the third incident, which was the physical fight, Pepsi terminated Gandy. (Plaintiff's Exs. 3, 13)

The parties have stipulated that: (1) Gandy suffers from "traumatic brain injury" ("TBI"); (2) Gandy's TBI is a disability within the meaning of the ADA; and (3) Gandy's TBI "may have affected his ability to cope with, manage, and resolve anger issues." (Plaintiff's Ex. 7) Gandy asserts that his TBI was caused by a "catastrophic" automobile accident in 1999, which left him in a coma for some time, and caused him to miss an entire year of work. Gandy also contends that the accident "left a very obvious scar on his head." (Moving Brief, p. 6)

Shortly after Gandy returned to work in 2000, after his accident, he testified that he gave his supervisor at the time, Joe Puccio, a letter from his psychologist. (Gandy Dep. p. 25-26) The letter reads in its entirety:

> To Whom It May Concern:
>
> I have been treating Mr. Gandy for the psychological symptoms that occurred following his head injury. He reported that he experienced some behavioral difficulties when returning to work, mainly consisting of temper outbursts. This is not unusual for individuals

3

> that have sustained a head injury, as they attempt to return to work or school. Often they report feeling overwhelmed by new challenges.
>
> Currently, Mr. Gandy reports that he has made a positive adjustment to his work responsibilities. He also reports that he is feeling better overall. I am discharging him from regular psychotherapy treatment at this time. He knows that he may call at any time if new problems arise.

(Plaintiff's Ex. 5)

The record contains no facts as to what Puccio did with the letter or how he responded to it.

In 2008, the Director of the anger management program in which Gandy participated wrote to Gandy's supervisor, Ruben Fuentes:

> Dear Mr. Fuentes:
>
> I am writing to you regarding Mr. Shane Gandy who consulted our . . . offices to address personal difficulties he had experienced related to interpersonal interactions while at work.
>
> Mr. Gandy subsequently enrolled in the . . . Anger Management program at our offices on December 5, 2007 to address those difficulties. Mr. Gandy was treated on a weekly basis until April 24, 2008, when he was discharged from treatment.
>
> I found Mr. Gandy to be a straightforward and cooperative individual who was punctual for each session. He was sober, alert and oriented at each session. He was responsive towards treatment and demonstrated improvement in his insight regarding the difficulties that he experienced.
>
> He was able to participate in the program in a positive and constructive manner and was respected by others. At this time, Mr. Gandy is able to apply those interventions and personal management techniques learned in the

>program in a competent manner.  There is no evidence of any subtle manifestations of behavior that are harmful to him and/or contrary to acceptable social behavior. He is aware of and influenced by the consequences of his actions.
>
>I am not recommending any further treatment for Mr. Gandy.

(Plaintiff's Ex. 12)

The supervisors involved in the decision to terminate Gandy-- Ruben Fuentes and William Moser (Plaintiff's Ex. 13)-- both testified that they did not know that Gandy suffered from TBI. (Fuentes Dep. p. 22, 25; Moser Dep. p. 16-17)  Seven of Gandy's co-workers also state that they did not know that Gandy had a disability.  (Barber Decl. ¶ 4; Simon Decl. ¶ 3; Koehler Decl. ¶ 4; Schoolfield Decl. ¶ 4; Pospiech Decl. ¶ 3; Tims Decl. ¶ 4; DiCristo Decl. ¶ 3)  In particular, Christopher Pospeich stated in his declaration, "[i]n the course of my employment, I became friendly with Plaintiff Shane Gandy, and once even visited Mr. Gandy's house outside of work.  Although I knew Mr. Gandy fairly well, I was unaware that Mr. Gandy had any disability." (Pospiech Decl. ¶ 3)

>Gandy testified at his deposition:
>
>Q:  Did the employees that you worked with know of your TBI?
>
>A:  Yes. The management that I dealt with, they knew about it.
>
>Q:  What about your co-employees?

5

A. Some, yes.

(Gandy Dep. p. 261)

## II.

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted if "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 252.

**III.**

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a). Obviously, if an employer did not know of an employee's disability, its actions could not have been motivated by discriminatory animus, and therefore it cannot be liable under the ADA. *Cf. Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) ("the factual dispute at issue is whether discriminatory animus motivated the employer.").

The record contains no evidence that Gandy told anyone that he had a mental / emotional / behavioral disability. Indeed, the record does not even disclose when Gandy or his doctors first determined that his anger outbursts were connected to his TBI.

Moreover, the facts in the record cannot support an inference that Pepsi should have known from Gandy's history of aggressive behavior that he had a disability. Gandy argues that his aggressive behavior, along with the "obvious" scar on his head, and the fact that some people at Pepsi knew Gandy was in a severe car accident in 1999, should have led a reasonable person to conclude that Gandy was disabled. This is not a reasonable inference to draw from the facts of this case. Even the doctors' notes that Gandy provided to Pepsi do not support an inference that Gandy had a disability, a symptom of which is aggressive behavior.

7

Lastly, Gandy's conclusory, vague deposition testimony that "management" "knew" of his disability is insufficient to raise a triable issue of fact as to Pepsi's knowledge of his disability and therefore Pepsi's discriminatory intent.

Construing the record facts in the light most favorable to Gandy, and drawing all reasonable inferences in his favor, a reasonable factfinder could not find that Pepsi had discriminatory animus toward Gandy. Accordingly, Pepsi's Motion for Summary Judgment will be granted.

## IV.

For the reasons set forth above, Pepsi's Motion for Summary Judgment will be granted. An appropriate Order accompanies this Opinion.


Dated:  November 20, 2014             ____s/ Joseph E. Irenas_____
                                      **Joseph E. Irenas, S.U.S.D.J.**